UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WRENZOLA M. ESTES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 05 C 5301 |
| v. ) | |
| ) | Judge John W. Darrah |
| JOHN E. POTTER, Postmaster General of the ) | |
| United States Postal Service, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Wrenzola Estes, filed suit, *pro se*, against Defendant, John Potter, Postmaster General of the United States Postal Service ("Postal Service"), alleging race discrimination and retaliation. Subsequently, Estes' discrimination claim was dismissed as untimely. Presently pending before the Court is Defendant's Motion for Summary Judgment as to Estes' remaining retaliation claim. The Postal Service provided Estes proper notice to a *pro se* litigant opposing a motion for summary judgment pursuant to Local Rule 56.2.

## FACTS

In 1999, Estes, an African-American, began her employment with the Postal Service as a Carrier. (Def.'s 56.1(a)(3) Statement ¶ 1). In May 2003, Estes filed her first formal Equal Employment Opportunity ("EEO") complaint, alleging race and sex discrimination. (Plaint.'s 56.1(b)(3) Statement ¶ 1). On September 5, 2003, Estes was issued a Letter of Warning for "failure to maintain a regular schedule" because she incurred 24 hours of emergency annual leave and 1.12 hours of tardiness. (Def.'s 56.1(a)(3) Statement ¶ 2). The dates for the absences and tardiness were from March 24, 2003 through August 7, 2003. (Def.'s Exh. 3).

On September 30, 2003, Estes was suspended for seven days for failure to perform her duties in a safe manner, following a preventable accident. (Def.'s 56.1(a)(3) Statement ¶ 3). On October 15, 2003, Estes contacted the EEO for pre-complaint counseling. On October 25, 2003, Estes was issued a 14-day suspension for failing to follow instructions. On October 28, 2003, Estes' 14-day suspension was rescinded. (Plaint.'s 56.1(b)(3) Statement ¶ 1).

On November 7, 2003, Estes was suspended for fourteen days for failing to follow directions, including failing to call into her office at a designated time while delivering mail, failing to return a scanner to its position, and refusing to cooperate in the accident repeater program. (Def.'s 56.1(a)(3) Statement ¶ 4). Estes filed a grievance as to the suspension, and it was subsequently reduced to a 10-day suspension. (Plaint.'s 56.1(b)(3) Statement ¶ 1).

On January 21, 2004, Estes filed a second EEO complaint, alleging race discrimination and retaliation against the Postal Service. (Plaint.'s 56.1(b)(3) Statement ¶ 2). On March 5, 2004, Estes was suspended for fourteen days for failing to maintain a regular schedule after she incurred 4.65 hours of sick leave, 0.87 hours of tardiness, and 16.49 hours of emergency annual leave between September 2003 and January 2004. (Def.'s 56.1(a)(3) Statement ¶ 5). On July 29, 2004, Estes was suspended for thirty days when she failed to deliver thirty-one pieces of express mail in a timely manner. This suspension was originally a notice of removal but was reduced to a suspension after Estes filed a grievance regarding the Notice of Removal. (Id., ¶ 6).

On September 27, 2004, Estes was issued a Notice of Removal for failing to maintain a regular work schedule and for being absent without leave ("AWOL") when she incurred 8 hours of AWOL, 8 hours of emergency leave, 5.34 hours of late annual leave, and 2.45 hours of late leave without pay between June 2004 and September 2004. The proposed removal was upheld by the agency and became effective December 2, 2004. (Def.'s 56.1(a)(3) Statement ¶ 7).

Estes pursued her EEO claim regarding her removal through the Merit System Protection Board ("MSPB"). (Def.'s 56.1(a)(3) Statement ¶ 15). On March 2, 2005, the MSPB affirmed the agency's decision to remove Estes for the reasons set forth in the September 2004 Notice of Removal. Specifically, the MSPB found that Estes did not prove that she was treated worse than other postal employees who engaged in the same behavior as she did and who were disciplined the same number of times for the same or similar reasons. The MSPB also found that Estes provided no evidence of retaliation and that "despite an extensive past disciplinary history, [she] continued to engage in misconduct." (Id., ¶ 16). Estes filed a petition for reconsideration of the MSPB decision. The petition was denied on August 18, 2005. (Id., ¶ 17).

## ANALYSIS

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact." Fed R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) (*Celotex*). All of the evidence and the reasonable inferences that may be drawn from the evidence are viewed in the light most favorable to the nonmovant. *Miller v. American Family Mutual Ins.*, 203 F.3d 997, 1003 (7th Cir. 2000). Summary judgment may be granted when no "reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*,

3

477 U.S. 242, 248 (1986) (*Anderson*). However, a party cannot defeat summary judgment by relying on unsubstantiated facts. *See Greer v. Board of Educ. of the City of Chicago*, 267 F.3d 723, 729 (7th Cir. 2001) (*Greer*).

Estes' remaining claim is that she was terminated in September 2004 in retaliation for her previously filed EEO complaints.

An employee may present either direct or indirect evidence of retaliation. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007) (*Humphries*). Under the direct method, a plaintiff must show: (1) she engaged in a statutorily protected activity, (2) she was subjected to an adverse employment action, and (3) there is a causal connection between the two events. *See Humphries*, 474 F.3d at 404.

Estes has established the first two prongs, she engaged in a statutorily protected activity and her employment was terminated. In support of her argument that there is a causal connection between her filing the EEO complaint and her termination, Estes relies upon the timing of the disciplinary actions taken against her and her filing of the EEO complaints. Other than the timing of the events, Estes provides no evidence of retaliatory motive. "Speculation based on suspicious timing alone . . . does not support a reasonable inference of retaliation." *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir. 2000). A plaintiff does not meet her burden under the direct method of proof of retaliation by presenting no evidence of retaliatory motive other than the timing of her termination. *See Burks v. Wisconsin Dept. of Transp.*, 464 F.3d 744, 758-59 (7th Cir. 2006) (*Burks*). Furthermore, as to Estes' claim of retaliation, any speculation based on timing alone fails to support a reasonable inference of retaliation because the absences that are the basis of the termination are undisputed.

4

Under the indirect method, a *prima facie* case of retaliation requires the plaintiff to demonstrate that: (1) she engaged in a statutorily protected activity; (2) she performed her job according to her employer's legitimate expectations; (3) despite meeting her employer's legitimate job expectations, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. If the plaintiff establishes a *prima facie* case, the employer must offer a legitimate, noninvidious reason for the adverse employment action. Once the employer does this, the burden shifts back to the plaintiff to demonstrate that the employer's proffered reason for termination is a pretext to retaliation. *See Tomanovich v. City of Indianapolis*, 457 F.3d 657, 663 (7th Cir. 2006).

Estes has failed to demonstrate that a genuine issue of material fact exists as to whether she was performing her work according to the U.S. Postal Service's legitimate expectations nor that she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. In her response, Estes does not even attempt to argue that she was meeting the Postal Service's legitimate expectations; and the above-stated employment history overwhelmingly demonstrates to the contrary. Furthermore, while Estes lists several employees whom, she argues, engaged in similar conduct and had similar absences, she has not demonstrated that any of the identified individuals are similarly situated to her. To determine whether employees are similarly situated, the Court considers "all relevant factors, the number of which depends on the context of the case." *Humphries*, 474 F.3d at 405, *quoting Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir.2000) (*Radue*). "This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's

treatment of them." *Radue*, 219 F.3d at 617-18. For Estes to show that a fellow employee is similarly situated to her, she must set forth some evidence that the employee is "directly comparable to her in all material respects." *Burks*, 464 F.3d at 751, *quoting Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir.2002). Estes presents no evidence that any of the alleged similarly situated employees were directly comparable to her in all material respects.

Lastly, Estes fails to demonstrate that the Postal Service's proffered reason for her termination, failing to maintain a regular work schedule and being absent without leave, was a pretext to retaliation.

Based on the above, Estes has failed to demonstrate a genuine issue of material fact exists as to her retaliation claim.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is granted.

Dated: August 28, 2007

JOHN W. DARRAH
United States District Court Judge